## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**AB&T MIDWEST,**

      **Plaintiff,**

    **v.**

**AIPTEK INTERNATIONAL, INC.,
AIPTEK, INC. (U.S.A.), and AIPTEK
PRECISION MANUFACTURING, INC.**

      **Defendants.**

Civil No. 05-0433 (MJD/JGL)


**REPORT AND
RECOMMENDATION**

---

### APPEARANCES

Galen Watje and Steven Moore, Esqs., appeared for Plaintiff

Eric Jackson and Malcolm MacGregor, Esqs., appeared for Defendants

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

      The above-entitled matter came before the undersigned Chief Magistrate Judge of District Court on April 26, 2005, on the Motion to Dismiss for Lack of Jurisdiction and Insufficient Service by Defendants Aiptek Precision Manufacturing Inc. and Aiptek International Inc. (Doc. Nos. 2 and 3) and Defendant Aiptek, Inc.'s Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Transfer (Doc. No. 6).   The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

## I.    BACKGROUND[1]

Plaintiff AB&T Midwest is a joint venture made up of Computer Reps, Inc. ("CRI") and AB&T Sales Corp.  Complaint at ¶ 9.  CRI is a Minnesota company in the business of supplying marketing services to manufacturers of computer related products in the Midwest; AB&T Sales Corp is a Delaware corporation engaged in the business of supplying marketing services to manufacturers in the consumer electronics industry in the United States.  Id. at ¶¶ 1-2.  In 2001, CRI and AB&T began discussions which resulted in the two companies agreeing to engage in the joint venture known as AB&T Midwest, the Plaintiff here, and the two venturers "hoped to expand into consumer electronics marketing in the Midwest and build a new business in a growing market by marketing consumer electronics products."  Id. at ¶ 9.

Aiptek Precision Manufacturing, Inc. ("APM") is a "corporation located in China that manufactures digital cameras and related products for sale in the United States and elsewhere."  Id. at ¶ 3.  Aiptek International, Inc. ("AII") is  a publicly held corporation under the laws of Taiwan, with headquarters in Taiwan, that manufactures digital cameras and related products for sale in the United States and elsewhere.  Id. at ¶ 4.  The

---

[1]    For purposes of the motion only, this Court must assume the factual allegations in the Complaint as true.

Complaint also alleges that APM "does engineering and design work for Aiptek

Precision Manufacturing, Inc. and has a common interest with Aiptek

Precision Manufacturing, Inc. in the sale of digital cameras and related

products in the United States and elsewhere."  Id.

Aiptek, Inc. (U.S.A.) is a California corporation involved in the sale

of digital cameras and related equipment manufactured by APM and AII  "and

has a joint or common interest in such sales."  Id. at ¶ 5.  The Complaint

collectively calls all three Defendants "Aiptek."  Id.

In approximately 1998, CRI was contacted by Johnson Chuang,

"an agent of Aiptek, Inc." to secure CRI's services in trying to sell Defendants'

web camera to four companies - Best Buy, Sears Roebuck, Damark and

Heartland.  Id. at ¶ 6.  The parties entered into a written agreement, which

stated that CRI would be paid a commission of 3%. Id.

In 2001, CRI began discussions with AB&T Sales Corp. regarding

forming the joint venture, AB&T Midwest, the Plaintiff in this case.  Id. at ¶ 9.

In approximately 2002, "Plaintiff's representatives began discussing with

Defendants' representatives the possibility of seeking to obtain a 'trading

partner' relationship on Defendants' behalf with Target Corporation (Target

Stores) in Minneapolis."  Id. at ¶ 13.  Defendants had no marketing

department, no ability to obtain a hearing with Target Stores, and no

knowledge of how it could achieve trading partner status with Target Stores.
<u>Id.</u> at ¶ 14.

As a result of discussions between Johnson Chuang and
representatives of Plaintiff, Defendants asked Plaintiff to consult with it and
seek to obtain trading partner status for Defendants with Target Stores with
an expectation that Plaintiff would be paid the reasonable value of its services,
ideas, creativity, effort and expense. <u>Id.</u> at ¶ 18.  Plaintiff's agent and
Johnson Chuang "spent innumerable hours on the telephone consulting" on
issues related to the effort to obtain trading partner status at Target Stores.
<u>Id.</u> at ¶ 19.  Plaintiff was able to arrange for Johnson Chuang to "begin
meeting Target Stores' representatives in late 2002." <u>Id.</u> at ¶ 22.

Plaintiff succeeded in getting Defendants' products into Target
Stores' online business, and "Plaintiff's representatives continued to have
correspondence with and communications from and to Defendants six to
seven times per day." <u>Id.</u> at ¶ 23.  Plaintiff obtained a meeting with a
prospective Target Store buyer on September 4, 2003, and Plaintiff advised
Defendants regarding the September 4, 2003, meeting. <u>Id.</u>  The September 4,
2003, meeting with Target Stores was successful, and Defendants were invited
to a competitive line review meeting to be held on October 9, 2003. <u>Id.</u>
Plaintiff worked with Defendants on the October 9, 2003, presentation, and

Plaintiff and Defendants were thereafter notified that they would be awarded "trading partner" status with Target Stores for Defendants to supply Target Stores from April 1, 2004 through April 1, 2005.  Id. at ¶ 24.

Over the next five to seven months, "Plaintiff had regular meetings with Target Stores' personnel and daily conversations with Defendants."  Id. at ¶ 26.  Plaintiff worked many hours to meet with Target Stores representatives and to negotiate a program for Defendants in preparation for fourth quarter 2004, during which time most sales are made.  Id. at ¶ 27.  On July 19, 2004, Plaintiff received an e-mail from Defendants purporting to terminate their relationship with Plaintiff.  Id. at ¶ 29.

Plaintiff has submitted the Affidavit of Jon Demars, who testifies that "Johnson Chuang made four regularly scheduled visits to Minnesota every year from 1998 forward on behalf of Aiptek to call on customers at quarterly customer reviews in Minnesota."  Jon Demars Aff. at ¶ 4.  Jon Demars further testifies that he "made numerous joint calls on customers with Johnson Chuang in Minnesota, including calls on Best Buy and Target."  Id. at ¶ 6.  Jon Demars "helped Johnson Chuang design and edit the sales presentation made at Target in Minneapolis, Minnesota on October 9, 2003."  Id. at ¶ 13.  In that sales presentation, Johnson Chuang submitted a business card which described himself as VP Sales & Marketing for "Aiptek" (not Aiptek,

Inc. U.S.A.)  and handed out an "Aiptek" catalog which described Aiptek's

international operations, listing addresses in Taiwan, California, and

Germany. Id. at ¶ 16, Exhibit 4.  The business address on Mr. Chuang's card

is listed as Irvine, California.  Id.  Jon Demars states that Mr. Chuang told

Target Stores that "Aiptek" was seeking to sell product to Target Stores, and

the presentation described Aiptek as a "publicly traded Taiwan Company with

financial strength."  Id. at ¶ 13

        Plaintiff's first count alleged against Defendants is an unjust

enrichment claim.  Complaint at ¶¶ 11-31.  Plaintiff asserts that Defendants'

actions were taken to deprive Plaintiff of compensation for its work expended

on Defendants' behalf, and Plaintiff seeks to recover the reasonable value of its

efforts.  Id. In the alternative, Plaintiff asserts a Partnership claim, contending

that the parties entered into a partnership agreement with respect to

revenues that would be generated from Target Stores.  Id. at ¶¶ 32-34.

Plaintiff also claims that Defendants violated Minn. Stat. § 325E.37, in that

Plaintiff qualifies as a manufacturer's representative and Defendants violated

the statute by failing to give Plaintiff the notice required by the statute.  Id. at

¶¶ 35-36.

        Defendants AII and APM, both foreign corporations, move to

dismiss the Complaint against them on the grounds that this Court lacks

6

jurisdiction over them.  In support of their motion, they have submitted the

Affidavit of Johnson Chuang, who testifies that Aiptek, Inc. is a wholly-owned

subsidiary of AII.  Chuang Aff. at ¶ 2.  Chuang further testifies that AII and

APM have no offices, employees or property located in the United States and

do not do business in the United States.  Id. at ¶ 3.  Mr. Chuang states that

"[a]ny and all business done in the United States with respect to AII or APM

products is done only by Aiptek [Inc.]from its offices in Irvine, California."  Id.

Because Plaintiff served the present Complaint on AII and APM at Aiptek Inc.'s

California office, and because AII and APM have no offices or employees in the

United States, Defendants AII and APM also argue that service was ineffective

and the Complaint against them should therefore be dismissed for

insufficiency of service of process.

## II.    ANALYSIS

### A.    <u>Motion to Dismiss Standard</u>

To survive a motion to dismiss for lack of personal jurisdiction, the

nonmoving party must only make a prima facie showing of personal

jurisdiction.  <u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384,

1387 (8th Cir. 1991) (citations omitted); <u>Elecs. for Imaging, Inc. v. Coyle</u>, 340

F.3d 1344, 1349 (Fed. Cir. 2003) (citations omitted).  Additionally, on a

Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal

jurisdiction without an evidentiary hearing, the facts must be viewed in the light most favorable to the nonmoving party.  <u>Id.</u>; <u>Mountaire Feeds, Inc. v. Agro Impex, S.A.</u>, 677 F.2d 651, 653 (8th Cir. 1982) (citations omitted).

A court must first examine whether personal jurisdiction is proper under the forum state's long-arm statute.  <u>See</u> <u>Wessels, Arnold and Henderson v. National Medical Waste</u>, 65 F.3d 1427, 1431 (8th Cir. 1995).  If the state statutory requirements are met, a court then addresses whether exercising personal jurisdiction comports with due process.  <u>Id.</u>  Minnesota's long-arm statutes "extend jurisdiction to the maximum limit consistent with due process."  <u>Id.</u>

If this Court determines that personal jurisdiction is appropriate under Minnesota's long arm statute, it must then consider whether constitutional Due Process considerations are satisfied.  <u>See</u>, <u>e.g.</u>, <u>International Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945).  Due Process is adequate where a nonresident has sufficient "minimum contacts" with the forum so that personal jurisdiction is consistent with "traditional notions of fair play and substantial justice."  <u>International Shoe Co.</u>, 326 U.S. at 316 (citations omitted).  When a forum seeks to assert personal jurisdiction over a nonresident defendant, the defendant has "fair warning" of suit in the forum if the defendant has "purposefully directed his activities at residents of the

8

forum." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (citation omitted).  The contacts between the nonresident defendant and the forum must be such that the defendant should "reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

The Eighth Circuit employs a five-factor test to determine whether a defendant has adequate contacts with Minnesota to justify personal jurisdiction:  (1) quantity of the contacts with the forum state; (2) nature and quality of the contacts; (3) relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for the litigation; and (5) convenience of the parties. <u>Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.</u>, 89 F.3d 519, 522 (8th Cir. 1996).  The first three factors are given primary consideration, while the last two are considered secondary. <u>See</u> <u>Aftanase v. Econ. Baler Co.</u>, 343 F.2d 187, 197 (8th Cir. 1965).

**B**.   **<u>Motion to Dismiss by AII and APM</u>**

Defendants AII and APM move to dismiss the Complaint against them, contending that Plaintiff has not established a prima facie case of personal jurisdiction.  This Court agrees.  The Complaint alleges no specific contacts between either AII or APM and Minnesota.  Instead, the Complaint merges all three Defendants together in describing the contacts with

9

Minnesota.  Such conclusory pleading, without more, is insufficient to show

this Court that these foreign entities could reasonably anticipate being haled

into Court in Minnesota.  Plaintiff's submission of Mr. Chuang's "Aiptek"

business card, catalog, and sales presentation do not provide this Court with

enough information to find that Mr. Chuang was specifically representing AII

or APM in meeting with Target Stores.  Indeed, the only address listed on Mr.

Chuang's business card is the California address of Aiptek, Inc. In light of Mr.

Chuang's testimony that AII and APM have no employees in the United States,

this Court cannot find on this record that his contacts with Minnesota sustain

personal jurisdiction over AII and APM.[2]  Accordingly, this Court recommends

that the motion of AII and APM be granted.

### C.   <u>**Motion to Dismiss by Aiptek, Inc**</u>.

Defendant Aiptek, Inc. moves to dismiss the Complaint against it

for lack of personal jurisdiction.  In support of its motion, Aiptek, Inc.

contends that the Plaintiff joint venture does not exist, and that the only

entity with whom Aiptek, Inc. had a relationship was CRI.  Aiptek, Inc.

contends that its relationship with CRI is governed by the Manufacturer's

Representative Agreement, which was negotiated in California, and has since

---

[2]   While additional facts may exist to support personal jurisdiction, they are not part of the record before the Court.

been terminated.  Aiptek, Inc. argues that its contacts with Target Stores in

Minnesota are insufficient to confer general jurisdiction because the products

sold by Aiptek, Inc. were not intended solely for Minnesota end users, and the

fact that Target Stores are headquartered in Minnesota is irrelevant to this

motion.  It appears that Aiptek, Inc. contends that its contacts with Target

Stores are insufficient to confer specific personal jurisdiction because those

contacts were in conjunction with its Manufacturer's Representative

Agreement with CRI, and not in conjunction with the Plaintiff joint venture as

alleged in the Complaint, which Aiptek, Inc. claims is fictional.

Plaintiff opposes Aiptek Inc.'s motion, pointing to the multiple

contacts made by Mr. Chuang, including trips to Minnesota in connection

with obtaining business from Target Stores.  Plaintiff submitted affidavits of

Ron Demars and Jon Demars, who testify to additional information regarding

Mr. Chuang's contacts with Minnesota on behalf of Aiptek, Inc. and regarding

Plaintiff as a joint venture.[3]

---

[3]     Defendants have filed "Objections" to the affidavits, which detail many disagreements Defendants have with the facts as detailed by Ron and Jon Demars.  Plaintiff then filed a Request to Strike Defendants' Reply Brief and Defendants' Objections, on the grounds that they were not timely filed and that page limitations were exceeded.  Such documents, which have not been filed as motions requiring Court action, are not properly before this Court.  Nevertheless, this Court denies Plaintiff's Request to Strike the Objections and Reply Brief.  The "Objections" are overruled, on the grounds that the factual disputes as alleged by Defendants, are irrelevant for purposes of this motion, where the facts must be viewed with a light favorable to Plaintiff and the issues determined as a matter of law.

This Court finds that Plaintiff has established a prima facie case of specific personal jurisdiction over Aiptek, Inc.  The Complaint alleges that Plaintiff assisted Aiptek, Inc. in getting into Target Stores, and that Johnson Chuang, on behalf of Aiptek, Inc., made several contacts with Minnesota and Plaintiff in connection with getting business with Target Stores.  Plaintiff has submitted additional uncontroverted evidence that Johnson Chuang personally visited Minnesota to meet with Target Stores and Jon Demars as part of Aiptek Inc.'s efforts to get products into Target Stores.   The Complaint's causes of action arise out of Aiptek Inc.'s contacts with Target Stores and the dispute over whether Aiptek, Inc. owes Plaintiff money as a result of its efforts in getting Aiptek, Inc. into Target Stores.  Rather than deny these contacts with Minnesota, Aiptek, Inc. has submitted many pages of denials, objections, and argument to "prove" to the Court that the allegations in the Complaint are false, that the Plaintiff does not exist, that Ron and Jon Demars were acting on behalf of CRI and not Plaintiff, and that any sales to Target Stores is governed by the Manufacturers Representative Agreement.  In other words, Aiptek, Inc. is defending the present Motion to Dismiss by pointing to a plethora of fact disputes which simply cannot be resolved by this Court at this juncture.

Assuming the facts pled in the Complaint to be true, and considering the uncontroverted evidence that Aiptek, Inc. visited Minnesota in an effort to obtain the Target Stores business, this Court finds that sufficient quantity and quality of contacts exist with Minnesota, relating to the causes of action, to support personal jurisdiction under this state's long arm statute. With multiple contacts with Minnesota and Jon Demars in an effort to place products in Target Stores, Aiptek, Inc. has purposefully directed its activities at Minnesota residents and could reasonably anticipate being haled into court here. Accordingly, this Court recommends that Defendant Aiptek, Inc.'s Motion to Dismiss be denied.

**D.      Motion to Transfer Venue**

Defendant Aiptek, Inc. alternatively moves to transfer venue to the Central District of California, pursuant to 28 U.S.C. § 1404, contending that a substantial part of the events giving rise to Plaintiff's claim took place in California. Aiptek, Inc. argues that the Manufacturers Representative Agreement was executed by Aiptek, Inc. in California, negotiated in California, and all meetings were held in California. However, this Court has already determined that substantial contacts underlying Plaintiff's causes of action took place as a result of Aiptek, Inc.'s contacts with and visits to Minnesota. While Defendant's witnesses may be in California, Plaintiff's witnesses will

13

likely be found in Minnesota.  On this record, the Court finds no reason to transfer venue to California and recommends that Defendant Aiptek, Inc.'s alternative motion to transfer should be denied.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) the Motion to Dismiss for Lack of Jurisdiction by Aiptek Precision Manufacturing Inc. and Aiptek International Inc. (Doc. No. 2) should be **GRANTED**;

2) the Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service by Aiptek Precision Manufacturing Inc. and Aiptek International Inc. (Doc. No. 3) should be **GRANTED**;

3) the Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Transfer by Defendant Aiptek, Inc. (Doc. No. 6) should be **DENIED**.

Dated: May 9, 2005

_____s/ Jonathan Lebedoff_____
JONATHAN LEBEDOFF
Chief United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties by May 26, 2005, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.